IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  10-cv-01939-WYD-KMT

BEVERLY ANN TWITCHELL,

     Plaintiff,

v.

STUART HUTTON;
THOMAS WHIDDON;
GLEN HAMMOND, all in their individual and official capacities;
UNKNOWN JOHN DOE SUPERVISORS of the City of Steamboat Springs Police
Services Department;
UNKNOWN JOHN DOE TRAINING PERSONNEL of the City of Steamboat Springs
Police Services Department;
J.D. HAYS, Chief of Police and Manager of the Department of Safety of the City of
Steamboat Springs Police Services Department; and
The CITY OF STEAMBOAT SPRINGS, COLORADO,

     Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

     This matter is before the Court on the Defendants' Partial Motion to Dismiss

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 14), filed August 23, 2010.[1]

No response was filed.  The motion is granted in part and denied in part as set forth

below.

     This case involves the events surrounding Plaintiff's arrest for Obstructing a

Peace Officer and Resisting Arrest on July 12, 2009.  In her Complaint, Plaintiff

---

[1] On December 2, 2010, Defendant Glen Hammond filed a joinder in the partial
motion to dismiss (ECF No. 32).

contends that Defendant Community Service Officer Supervisor Thomas Whiddon approached Plaintiff, who had her dog with her, during an "Art in the Park" event in the City of Steamboat Springs, Colorado.  Whiddon informed Plaintiff that dogs were prohibited at the event.  Plaintiff alleges that Whiddon ordered her to leave the park and proceeded to follow her out of the park.  Plaintiff questioned the "no dogs" policy and requested the presence of a supervisor.  Defendant Police Officer Stuart Hutton responded to the scene.  Plaintiff alleges that Hutton asked Plaintiff for her name and age.  Plaintiff stated her name but "protested that it was impolite to ask the birth date of a mature woman such as herself."  (Compl. ¶ 8.)

Plaintiff further claims she then attempted to leave the area, but Hutton "yelled" that she was under arrest and grabbed and "began twisting her arm and manhandling her." (*Id.*)  Plaintiff alleges that Hutton threw her to the pavement where she was handcuffed by both Hutton and Defendant Community Service Officer Hammond, who had just arrived on the scene.  Plaintiff claims that she sustained severe back and shoulder injuries and arm sprains during the incident.  Plaintiff was transported to the Yampa Valley Medical Center where Hutton later arrived and issued Plaintiff a summons and complaint for obstructing a peace officer and resisting arrest.

In her Complaint, Plaintiff asserts twelve separate claims for relief against the various Defendants.  Among Plaintiff's twelve claims are three claims asserted pursuant to 42 U.S.C. § 1983 claiming violations of Plaintiff's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, as well as various tort claims and an Americans with Disabilities Act ("ADA") claim.

In the partial motion to dismiss, Defendants seek dismissal of all claims asserted against the City of Steamboat Springs (the "City"), Chief J.D. Hays and Officer Whiddon. Defendants also seek dismissal of Plaintiff's false arrest and conspiracy claims asserted against Officer Hutton.  With respect to Plaintiff's § 1983 claims, Defendants contend that the Complaint fails to allege sufficient facts showing that Chief Hays, Whiddon or the City violated Plaintiff's constitutional rights.  With respect to Plaintiff's state tort claims, Defendants argue that the City, Chief Hays and Officer Whiddon are entitled to governmental immunity.  Thus, the Court lacks subject matter jurisdiction over these claims.  Finally, Defendants seek dismissal of Plaintiff's tort claims for false arrest and conspiracy against all Defendants for failure to state a claim upon which relief may be granted.

II.    ANALYSIS

        A.    Standard of Review

        The pending motion seeks partial dismissal of Plaintiff's claims for either a lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) or for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).

        Where a party moves to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the attack can be either a facial attack to the allegations of the complaint or a factual attack.  *Paper, Allied Indus., Chemical and Energy Workers Intl. Union v. Continental Carbon* Co., 428 F.3d 1285, 1292 (10th Cir. 2005).  Where there is a facial attack on the sufficiency of the Complaint, the Court must look to its factual allegations and accept them as true.  *See id*; *Groundhog v. Keller*, 442 F.2d 674, 677

(10th Cir. 1971).

Fed. R. Civ. P. 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). The Court's inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir.2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, ___ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  Furthermore, conclusory allegations are "not entitled to the assumption of truth."  *Id.* at 1950.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true."  *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).  Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."  *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."  *Id.*  "This requirement of plausibility serves not

only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.  Additionally, the Tenth Circuit has instructed that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

"[A] district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response . . . .'  This is consistent with the purpose of Rule 12(b)(6) motions as the purpose of such motions is to test 'the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.'" *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (quoting *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)).  Consequently, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted. *Id.* at 1177-78.

B.  <u>Whether Dismissal of Plaintiff's Ninth Claim for Relief—Excessive Force Pursuant to 42 U.S.C. § 1983—Should be Dismissed Against Defendants Chief Hays and Officer Whiddon</u>

Plaintiff's Ninth Claim for relief alleges excessive and unreasonable force pursuant to 42 U.S.C. § 1983 against all of the Defendants.  (Compl. ¶¶ 65-77.) Specifically, Plaintiff asserts that Officer Hutton and other Defendants used excessive force under the circumstances resulting in severe injuries to Plaintiff.

In the motion to dismiss, Defendants argue that "[t]he Complaint fails to allege

that either Chief Hays or Officer Whiddon personally participated in the allegedly unlawful conduct, and personal participation is an essential element of a claim alleging a constitutional deprivation under § 1983." (Mot. at 5-6.)

The Tenth Circuit has held that in order for "liability to arise under § 1983, a defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established." *Trujillo v. Williams*, 465 F.3d 1210, 1227-28 (10th Cir. 2006) (internal citations omitted). Therefore, a Court may appropriately dismiss a claim where a plaintiff failed to allege personal participation of the defendants.

Turning to Plaintiff's Complaint, I note that since no response was filed, I must still examine Plaintiff's allegations to determine whether Plaintiff has alleged that Defendants Chief Hays and Officer Whiddon personally participated in the claimed excessive force against Plaintiff. After a careful review of the Complaint, I find that nothing indicates personal participation of Chief Hays or Officer Whiddon in Plaintiff's allegations of excessive force. To the contrary, Chief Hays is not alleged to have been present during Plaintiff's arrest, and Officer Whiddon is not alleged to have participated in Plaintiff's arrest. Furthermore, liability cannot be imposed on Chief Hays or Whiddon on a theory of respondeat superior under § 1983. *Id.* at 1228. Accordingly, Plaintiff's Ninth Claim for Relief is dismissed against Defendants Chief Hays and Officer Whiddon for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[2]

---

[2] In light of this ruling, I need not address whether Chief Hays and Officer Whiddon are entitled to the defense of qualified immunity in connection with this claim. Additionally, to the extent that Plaintiff alleges supervisory liability against Chief Hays, I address the viability of this claim in connection with Plaintiff's Eleventh Claim for Relief—failure to train and/or supervise pursuant to § 1983. *See supra* Part II(D).

C.    Whether Dismissal of Plaintiff's Tenth Claim for Relief—Municipal Liability Pursuant to 42 U.S.C. § 1983—Should be Dismissed Against the Defendant City of Steamboat Springs

Defendants argue that Plaintiff's Tenth Claim for Relief, which is asserted against the City pursuant to § 1983, fails to allege an unlawful custom, policy or practice and thus, fails to state a claim for relief.

Under § 1983, a municipality may be held liable for adopting an official policy or custom causing a violation of constitutional rights, but local governments cannot be sued under a respondeat superior theory of liability.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *Cannon v. City and Cnty. of Denver*, 998 F.2d 867, 877 (10th Cir.1993) ("The touchstone of a § 1983 action against a governmental body is an allegation that official policy is responsible for deprivation of rights protected by the Constitution.").  Specifically, "to establish municipal liability [under § 1983], a plaintiff must show: 1) the existence of a municipal policy or custom and 2) a direct causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006).  The official policy requirement permits courts to "distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action from which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986).

A plaintiff can establish a "municipal custom or policy" through the following means: (1) an officially promulgated policy; (2) a custom or persistent practice; (3) deliberately indifferent training that results in the violation of a plaintiff's federally

protected rights; (4) a single decision by an official with final decision-making authority;

(4) or ratification by an official with final decision-making authority of subordinates'

decisions.  *See Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189

(10th Cir. 2010); *Smith v. Barber*, 195 F. Supp. 2d 1264, 1271, n. 2 (D. Kan. 2002).

Turning to the case at hand, Plaintiff's claim of municipal liability appears to be

based on the alleged failure of the City to implement various policies, customs, or

usages governing its police officers' proper use of force, police officers' interaction with

disabled individuals, and discipline of officers who use excessive force.  (Compl. ¶¶ 78-

85.)

The City argues that Plaintiff's § 1983 claim should be dismissed against it

because Plaintiff fails to make sufficient allegations for the imposition of municipal

liability.  I agree.  First, Plaintiff seeks to impose municipal liability under § 1983 on the

basis of a single incident, which is Hutton's allegedly wrongful arrest and use of

excessive force on Plaintiff.  In general, however, "[p]roof of a single incident of

unconstitutional activity is not sufficient to impose [municipal] liability."  *Butler v. City of*

*Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  "In the case where a plaintiff seeks to

impose municipal liability on the basis of a single incident, the plaintiff must show the

particular illegal course of action was taken pursuant to a decision made by a person

with authority to make policy decisions on behalf of the entity being sued."  *Jenkins v.*

*Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (citing *Pembaur*, 475 U.S. at 483-85; *Butler*,

992 F.2d at 1055 ("Proof of a single incident of unconstitutional activity is not sufficient

to impose liability under [*Monell*] unless proof of the incident includes proof that it was

caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.")).

Here, Plaintiff fails to assert such an allegation in her Complaint.  Although Plaintiff makes several conclusory statements with regard to the "unconstitutional policies, customs, or usages of the Defendant City", there is no allegation that these policies and practices can be attributed to a municipal policymaker, or that such policies and practices even caused the incident in question.  In fact, Plaintiff repeatedly asserts that the deprivation of her constitutional rights was caused by the failure of the City to implement such a policy, custom or usage.  (Compl. ¶¶ 78-85); *see Jenkins*, 81 F.3d at 994.

Second, even assuming that Plaintiff's allegation of a single incident of unconstitutional activity is sufficient to impose liability on the City, I find that the Complaint does not contain "enough facts to state a claim [for § 1983 municipal liability] that is plausible on its face."  *Schneider*, 493 F.3d at 1177.  Paragraphs 78-85 of the Complaint set forth conclusory allegations that fail to identify a particular policy or custom that was a moving force behind Plaintiff's alleged constitutional violation.  Also, the Complaint does not clearly allege that Hutton's actions were taken in accordance with the City's policies or customs.  *See Graves v. Thomas*, 450 F.3d 1215, 1218 (10th Cir. 2006) (stating that plaintiff must show "a direct causal link between the policy or custom and the injury alleged" in order to establish municipal liability under § 1983).

Finally, I find that Plaintiff's Complaint fails to allege any facts regarding an affirmative approval of Hutton's actions, which is required in order to establish municipal

liability under § 1983 under a ratification theory.  *See Brammer-Hoelter*, 602 F.3d at

1189 ("Municipal liability may also be based on the decisions of employees with final

policymaking authority or the ratification by such final policymakers of the decisions-and

the basis for them-of subordinates to whom authority was delegated subject to these

policymakers' review and approval.").

      Accordingly, I find that Plaintiff's municipal liability claim asserted against the City

should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

      D.    <u>Whether Dismissal of Plaintiff's Eleventh Claim for Relief—
Unconstitutional Failure to Train and/or Supervise Pursuant to 42 U.S.C. §
1983—Should be Dismissed Against Defendants Chief Hays, the Manager
of Steamboat Springs Department of Safety and other John Doe and
Supervisory and Training Personnel and the City</u>

      Defendants argue that Plaintiff's claim alleging that the City and Chief Hays

failed to train or supervise city police officers should be dismissed because Plaintiff fails

to provide factual detail to support the claim under Fed. R. Civ. P. 12(b)(6).

      With respect to the claim against the City for failure to train, a municipality can

be held liable for failure to adequately train its employees in situations where the

potential for constitutional violations is so apparent.  The failure to train, however, must

constitute "deliberate indifference to the rights of persons with whom the police come

into contact."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-89, 109 S.Ct. 1197

(1989).  A "municipal custom or policy" may also be established through inadequate

training, *see Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) ("In the

absence of an explicit policy or an entrenched custom, 'the inadequacy of police training

may serve as a basis of § 1983 liability . . . where the failure to train amounts to a

deliberate indifference to the rights of persons with whom the police come into contact.'"). However, here, I find that Plaintiff's allegations regarding the City's failure to adequately train its police officers are not sufficient to state a claim for municipal liability under § 1983 and Fed. R. Civ. P. 12(b)(6).

While Plaintiff alleges a causal nexus between the alleged failure to train and the alleged constitutional deprivation, the allegations are conclusory in nature and merely recite boilerplate language without providing any supporting factual allegations. *See Martin v. Dist. of Columbia*, 720 F. Supp. 2d 19, 23 (D.D.C. 2010) (granting city's motion to dismiss § 1983 claim based on inadequate training when allegations did "nothing more than recite the required causal elements of custom or policy liability based on deliberate indifference" and plaintiff's "conclusory statements" were "unsupported by additional factual allegations"); *cf. Jordan by Jordan v. Jackson*, 15 F.3d 333, 340 (4th Cir. 1994) (holding that the complaint stated a claim against the county under § 1983 when it alleged existence of several specific customs or policies, including (1) "a policy of providing inadequate training to [county] employees both on how to determine whether a summary removal was proper and on the statutory procedural requirements following removal"; and (2) a practice of training employees in a manner that "encouraged the removal of any child left alone, regardless of the circumstances"); *Anderson v. City of Blue Island*, No. 09C5158, 2010 WL 1710761, at *2 (N.D. Ill. April 28, 2010) (finding plaintiff's § 1983 claim survived city's motion to dismiss when plaintiff's allegations of inadequate training "highlight[ed] a specific deficiency in the training provided to [police officers] he encountered on the night in question and

present[ed] a plausible causal connection between the training and constitutional deprivation he allegedly suffered."). Accordingly, here, since Plaintiff has set forth only a "formulaic recitation" of the elements of a § 1983 claim based on failure to train, Plaintiff's inadequate training allegation should be dismissed against the City under Fed. R. Civ. P. 12(b)(6). See *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 555).

Turning to Plaintiff's supervisory liability claim asserted against Chief Hays, Defendants contend that Plaintiff failed to allege that "Chief Hays, by virtue of his own conduct and state of mind, violated her constitutional rights. Rather, the Complaint seeks to hold Chief Hays liable for an alleged constitutional violation purely because of his supervisory status." (Mot. at 10.)

The Tenth Circuit has long held that a government official cannot be liable under a theory of respondeat superior. *Gagan v. Norton*, 35 F.3d 1473, 1476 n. 4 (10th Cir. 1994). However, in a recent decision interpreting *Iqbal*, the Tenth Circuit noted that the Supreme Court narrowed the scope of supervisory liability under § 1983. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Thus, after *Iqbal*, the *Dodds* Court instructed that a supervisor can be held liable under § 1983 only if "(1) [he] promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Id*. at 1199.

Turning to Plaintiff's Complaint, I find that it fails to plausibly plead that Chief

Hays—while possessing the required state of mind—acted in such a way that caused Plaintiff's alleged constitutional harm.  I agree with Defendants that Plaintiff's allegations focus on Chief Hays' supervisory status in alleging his liability.  For example,  Plaintiff alleges that Chief Hays, as the commanding officer for the Defendants, was responsible for the Defendants' training, supervision, conduct and for enforcing the regulations of the Steamboat Police Department.  (Compl. ¶¶ 13, 87.)  Plaintiff also makes a conclusory allegation that Chief Hays "adopted, authorized, and ratified and/or condoned policies and/or customs of the use of excessive force and deliberate indifference . . ." that deprived the Plaintiff of her constitutional rights.  (Compl. ¶ 13.)  However, Plaintiff offers no supporting facts in connection with her conclusory allegations.  Accordingly, I find that Plaintiff's allegations fail to contain sufficient factual matter, accepted as true, to state a plausible claim.  *See Iqbal*, 129 S.Ct. at 1949; *Twombly*, 550 U.S. at 570.  Because Plaintiff's Complaint only offers formulaic recitations of the elements of the cause of action, Plaintiff's supervisory liability claim asserted against Chief Hays is dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

      E.      Whether the City, Chief Hays and Officer Whiddon are Immune from Plaintiff's Tort Claims[3]

Defendants seek dismissal of Plaintiff's tort claims against the City, Chief Hays,

---

[3] Plaintiff alleges the following eight tort claims: (1) Negligence asserted against all Defendants; (2) Negligence per se asserted against all Defendants; (3) Battery asserted against all Defendants; (4) Assault asserted against all Defendants; (5) False Arrest asserted against all Defendants; (6) Intentional Infliction of Emotional Distress asserted against Defendant Hutton; (7) Malicious Abuse of Process asserted against Defendant Hutton; and (8) Conspiracy to Violate Civil Rights asserted against all Defendants.

and Officer Whiddon under Fed. R. Civ. P. 12(b)(1).  Specifically, Defendants argue that

the Colorado Governmental Immunity Act ("CGIA") provides immunity to these

Defendants from Plaintiff's tort claims.  Colo. Rev. Stat. § 24-10-101 et seq.

The CGIA governs circumstances under which a person may maintain a tort

action against the State of Colorado, its political subdivisions, instrumentalities, and

employees.  *See Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1203

(Colo. 2000).  The CGIA provides that a public entity, such as the City, is immune from

all claims that lie or could lie in tort, unless the claim falls within one of the eight limited

areas for which immunity has been waived.  *See* Colo. Rev. Stat. § 24-10-105-106.

The CGIA also provides similar immunity to public employees with two

exceptions.  First, public employees are not immune from tort claims if their acts or

omissions causing the injury were willful and wanton.  *See* Colo. Rev. Stat.

§ 24-10-118.  Second, public employees are not immune from claims falling within the

eight explicitly waived areas.  *See* Colo. Rev. Stat. §24-10-105.  The CGIA defines

"public employee" to include officers and employees of public entities.  Thus, I find that

Chief Hays and Officer Whiddon are public employees within the meaning of the CGIA.

*See* Colo. Rev. Stat. §24-10-103(4)(a).

Although the CGIA does not define the term "willful and wanton", the Colorado

Supreme Court looked to the definition of "willful and wanton" for purposes of exemplary

damages ("conduct purposefully committed which the actor must have realized as

dangerous, done heedlessly and recklessly, without regard to consequences, or of the

rights and safety of others, particularly the plaintiff") and the definition of "willful and

wanton" used in the automobile guest statute (as "wholly disregardful of the rights, feeling and safety of others ... at times even imply[ing] an element of evil"). *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1991).

Colo. Rev. Stat. § 24-10-110(5)(a) provides that in actions "in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the complaint." "Failure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted." § 24-10-110(5)(b). "Whether a plaintiff has pleaded sufficient facts to state a claim based upon willful and wanton conduct is to be determined by the court." *Barham v. Scalia*, 928 P.2d 1381, 1385 (Colo. App. 1996). "However, when there are disputed issues of fact, a well pleaded claim that an employee acted willfully and wantonly must await determination at trial on the merits." *Id.*

Turning to the Complaint, I must first determine whether Plaintiff sufficiently alleged that Chief Hays and Officer Whiddon engaged in willful and wanton conduct. I agree with Defendants that the Complaint lacks such allegations. First, as I previously found in this Order, Chief Hays was not present at the scene of Plaintiff's arrest and did not participate in the events giving rise to the arrest. Second, although Officer Whiddon was present during the incident, I find that Plaintiff's allegations, taken as true, do not show that his conduct was wilful and wanton. Officer Whiddon is alleged to have "ordered" Plaintiff to leave the park and then "subsequently followed her . . . outside of

the park." (Compl. ¶ 8.)  Whiddon, however, did not participate in Plaintiff's arrest and is not alleged to have had any physical contact with Plaintiff.  I find that these facts do not allege willful and wanton conduct.[4]  Also, because Plaintiff has failed to plead the factual basis of an allegation that Chief Hays' conduct was willful and wanton, Plaintiff's tort claims are dismissed against Chief Hays and Officer Whiddon.[5]

Second, I must determine whether Plaintiff's tort claims fall within any of the following eight areas for which immunity has been waived.  Colo. Rev. Stat. § 24-10-106 states that sovereign immunity is waived by a public entity in an action for injuries resulting from: (1) the operation of a motor vehicle; (2) the operation of any public hospital or correctional facility; (3) a dangerous condition of a public building; (4) a dangerous condition of a public highway; (5) a dangerous condition of a public park or recreational area; (6) the operation of a public water or sanitation facility; (7) the operation and maintenance of certain qualified state capital assets; and (8) the failure to perform a required educational employment background check.  Colo. Rev. Stat. § 24-10-106(a)-(h).  After reviewing the allegations in the Complaint, I find that none of Plaintiff's claims falls within these eight areas for which immunity has been waived.

---

[4] *Compare Peterson v. Arapahoe County Sheriff*, 72 P.3d 440, 444 (Colo. App. 2003) (finding that allegations of willful and wanton conduct contain an element of conscious disregard for the safety of others and that allegations sufficiently stated willful and wanton conduct when officers refused to take custody of an individual who had been captured and beaten by bounty hunters, who was in need of medical treatment, and who they knew would be subjected to continued beatings absent their intervention).

[5] Based on my review of the allegations in the Complaint with respect to Officer Hammond, I deny his request for dismissal of the tort claims asserted against him.  I find that Plaintiff's Complaint contains plausible allegations that Hammond's conduct during incident was willful and wanton.

Instead, Plaintiff's tort claims arise from injuries she allegedly sustained during the July

2009 incident with police and Plaintiff's subsequent arrest.

Accordingly, Plaintiff's claims of negligence, negligence per se, battery, assault,

false arrest and conspiracy against Defendants the City, Chief Hays and Officer

Whiddon are dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P.

12(b)(1).

      F.     <u>Whether Plaintiff's False Arrest and Conspiracy Claims Fail on their Merits</u>

Defendants also argue that Plaintiff's Fifth and Eighth Claims for relief should be

dismissed against all Defendants, including Defendants Hutton and Hammond, because

neither states a viable claim for relief.  Plaintiff's Fifth Claim for Relief alleges false

arrest.  "False arrest arises when one is taken into custody by a person who claims but

does not have proper legal authority."  *Enright v. Groves*, 560 P.2d 851, 853 (Colo. App.

1977).  In order to bring a claim for false arrest, a plaintiff must allege that the arrest

occurred without probable cause to believe that an offense had been committed by the

person who had been arrested.  *Id.*  Based on my review of the Complaint, particularly

the general allegations set forth in paragraphs 1-24, I find that Plaintiff has alleged a

plausible claim for false arrest against Defendants Hutton and Hammond.

I next turn to Defendants' motion to dismiss Plaintiff's civil conspiracy claim.  The

Defendants move the Court to dismiss this claim pursuant to Fed. R. Civ. P. 12(b)(6).  In

connection with the civil conspiracy claim, Plaintiff alleges that the Defendants

conspired to violate her constitutional rights.  In order to prove a § 1983 conspiracy

claim, a plaintiff must show that the defendants conspired to deprive him or her of a

constitutional right or a federally protected right under color of state law.  *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).  In addition to proving the conspiracy, plaintiff must also prove an actual deprivation of a constitutional right.  *Id.* at 1449; *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990).  Moreover, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994).

While I am dubious about the validity of this claim, it will remain for now against Defendants Hutton and Hammond.  I conclude that at this stage in the case, it would be premature to dismiss this claim.  After reviewing the allegations set forth in the Complaint in the light most favorable to the Plaintiff, I find that Plaintiff has plead sufficient facts to state a claim for relief that is plausible on its face.  Defendants' motion is denied as to Plaintiff's Fifth and Eight Claims for Relief.

G.    Whether Plaintiff Fails to State a Claim Under the Americans with Disabilities Act Against the City

Defendants next contend that Plaintiff's Twelfth Claim for Relief for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") should be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.  In order to state a claim for relief under the ADA, Plaintiff must allege that: (1) she is a qualified individual with a disability; (2) that she was either

excluded from participation or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Gohier v. Enright*, 186 F.3d 1216, 1219 (10th Cir. 1999).

In *Gohier v. Enright*, the Tenth Circuit held that a person with a disability can state a claim under the ADA based on police conduct in an arrest or investigation. *Gohier*, 186 F.3d at 1220-21. In *Gohier*, the Tenth Circuit discussed two potentially viable theories involving police conduct recognized by other federal courts: the wrongful-arrest theory and the reasonable-accommodation-during-arrest theory. Under the wrongful-arrest theory, law enforcement may be liable for arresting an individual after incorrectly perceiving the effects of the individual's disability as illegal conduct. *Id.* (citing *Lewis v. Truitt*, 960 F. Supp. 175, 178 (S.D. Ind. 1997) and *Jackson v. Town of Sanford*, 1994 WL 589617, at *6 (D.Me. Sept. 23, 1994)). Under the reasonable-accommodation-during-arrest theory, law enforcement may be liable if they fail to reasonably accommodate a person with a disability during the course of an investigation or arrest for a crime unrelated to that disability, thereby "causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* (citing *Gorman v. Bartch*, 152 F.3d 907, 912-13 (8th Cir. 1998)). However, while the Tenth Court clarified in *Gohier* that "a broad rule categorically excluding arrests from the scope of Title II . . . is not the law," the court stated that it remained "an open question in this circuit whether to adopt either or both [theories]." *Id.*

Here, Defendants argue that the Complaint is deficient in that Plaintiff failed to

allege that she is a qualified individual with a disability.  The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  *Sutton*, 527 U.S. at 478 (quoting 42 U.S.C. § 12102(2)); *Lanman v. Johnson County, Kansas*, 393 F.3d 1151, 1156 (10th Cir. 2004) (citing 42 U.S.C. § 12102(2)).  In other words, "to fall within this definition one must have an actual disability . . . , have a record of disability . . ., or be regarded as having one. . . ."  *Sutton*, 527 U.S. at 478.  Three elements must be established for a plaintiff to be considered "disabled" under 42 U.S.C. § 12102(2).  "[F]irst, plaintiff must have a recognized 'impairment'; second, plaintiff must identify one or more appropriate 'major life activities'; and third, plaintiff must show that the impairment substantially limits one or more of the major life activities."  *Bristol v. Bd. of County Commissioners of the County of Clear Creek*, 281 F.3d 1148, 1156 (10th Cir. 2002).

After reviewing Plaintiff's Complaint, I agree with the Defendants' argument.  I find that Plaintiff has failed to allege that she actually suffers from a "disability" as defined by the ADA.  Plaintiff alleges that she "had serious chronic orthopedic and neurological conditions" and that she had a "preexisting serious orthopedic condition." (Compl. ¶ 10).  However, even after taking such allegations as true, Plaintiff fails to allege any facts suggesting that these impairments substantially limit any of her major life activities.  Thus, Plaintiff makes no factual allegations placing her alleged impairments within the scope of the ADA.  The Complaint does contain one other allegation regarding Plaintiff's alleged disability, which reads, in part, "Plaintiff was a

qualified individual with a physical injury and disability . . ."  (Compl. ¶ 96.)  However, I

conclude that this allegation is insufficient under *Iqbal* and *Twombly* as it is merely offers

a formulaic recitation of the elements of a cause of action without any factual

enhancement.  Accordingly, Plaintiff's ADA claim is dismissed for failure to state a

claim.

III.    <u>CONCLUSION</u>

Based on the foregoing, Defendants' Partial Motion to Dismiss pursuant to Fed.

R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 14) is **GRANTED IN PART AND DENIED IN**

**PART.**  The motion is granted as follows:

Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh and Eighth Claims for

Relief are **DISMISSED** against Defendants the City, Chief Hays, and Officer Whiddon

under Fed. R. Civ. P. 12(b)(1).

Plaintiff's Ninth Claim for Relief is **DISMISSED** against Defendants Chief Hays

and Officer Whiddon for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Plaintiff's Tenth, Eleventh, and Twelfth Claims for Relief are **DISMISSED** against

Defendant the City for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

The motion is denied as to Plaintiff's Fifth and Eighth Claims for Relief against

Defendants Hammond and Hutton.

The motion is denied in all other respects.

Dated:  January 28, 2011

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge